UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JULIAN GREEN, EUGENE IVEY, JAMES P. MCKENNA, and LISA NEWMAN-POLK, individually and on behalf of all others similarly situated,<br><br>              Plaintiffs,<br><br>v.<br><br>MASSACHUSETTS DEPARTMENT OF CORRECTION, CAROL MICI, Commissioner of the Massachusetts Department of Correction, in her official capacity, SIRCHIE ACQUISITION CO. LLC, PREMIER BIOTECH, INC.,<br><br>              Defendants. | Civil Action No. 1:21-cv-11504-GAO |

## PREMIER BIOTECH, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' COMPLAINT FOR FAILURE TO STATE A CLAIM

Defendant Premier Biotech, Inc. ("Premier Biotech"), by and through its undersigned counsel, respectfully submits this Memorandum of Law in Support of its Motion to Dismiss Plaintiffs' Complaint ("Complaint") as to Premier Biotech pursuant to Fed. R. Civ. P. 12(b)(6) and request for entry of final and separate judgment in favor of Premier Biotech pursuant to Fed. R. Civ. P. 54(b).

## PRELIMINARY STATEMENT

Premier Biotech is a supplier of drug testing devices that are used by correctional facilities and officers across the country, including supplying to the Massachusetts Department of Correction ("DOC") certain NARK II brand drug detection devices that are manufactured by Defendant Sirchie Acquisition Company, LLC ("Sirchie"). It is not alleged that Premier Biotech produced, manufactured, or had any role in the creation of the NARK II products. Nor is it alleged

that Premier Biotech had any role in the utilization of drug detection devices by the DOC, training DOC employees, or the penalties given by DOC employees stemming from the use of the devices to test inmates.

## BACKGROUND

Plaintiffs' claims arise from the allegedly inaccurate results of a number of drug tests conducted by the DOC using products manufactured by Sirchie. Premier Biotech supplied the Sirchie products – specifically, the NARK II line of drug testing products – to the DOC based on a contract entered into between Premier Biotech and the DOC in or around 2017. (Complaint, at ¶ 18.) The NARK II products are intended to be used for the "presumptive identification" of certain drugs. (Complaint, at ¶ 20.) As "presumptive identification" tests, the tests are not intended to be used as conclusive evidence of the presence of drugs, and *it is not alleged that Premier Biotech promoted the tests as conclusive proof of the presence of drugs*. Premier Biotech submitted a bid for the sale of tests to the DOC and the DOC accepted that bid. (Complaint, at ¶¶ 18, 37.)

As part of its bid, Premier Biotech provided the DOC with marketing material relating to the NARK product line.[1] *Premier Biotech explicitly instructs all purchasers of the Sirchie products – including the DOC – to not rely on test results for conclusive proof of the presence of narcotics. See* Affidavit of Matthew Michalik ("Michalik Aff."), Exhibit A (NARK II Brochure), at p. 5. Premier Biotech further states that the NARK II products may result in the occurrence of false positives and false negatives, and that "[a] forensic laboratory is required to

---

[1]     Because these documents were referenced and relied on by Plaintiffs in the Complaint (at ¶ 37), they may be relied on by the Court in deciding the Motion to Dismiss. *See Cruz v. Melecio*, 204 F.3d 14, 21-22 (1st Cir. 2000) (any document fairly incorporated into Complaint may be considered on Motion to Dismiss).

qualitatively and quantitatively identify an unknown substance." *Id*. This same warning appears on all of Premier Biotech's NARK-related promotional materials. *See* Michalik Aff., <u>Exhibit B</u> (NARK Presumptive Drug Identification), at p. 1; Michalik Aff., <u>Exhibit C</u> (Introduction to NARK Presumptive Drug Analysis), at p. 2. The DOC accepted Premier Biotech's bid even with such warnings from Premier Biotech regarding the possibility for false test results and the direction to confirm tests with laboratory testing. Premier Biotech's contract for the supply of NARK II products is with the DOC alone. (Complaint, at ¶ 18.)

Sometime after 2017, Plaintiffs allege that the DOC used the NARK II products to issue tests to pieces of mail sent to Eugene Ivey and Julian Green. (Complaint, at ¶ 4.) Plaintiffs allege that the NARK II products returned positive results and that the DOC and its employees punished Ivey and Green without obtaining laboratory confirmation of the positive test results. (Complaint, at ¶¶ 69-75, 78-84.) Plaintiffs do not allege that Premier Biotech took part in any of the specific tests at issue, nor was it part of any of the disciplinary decisions allegedly levied against Plaintiffs. Nonetheless, Plaintiffs filed their original class action Complaint on July 28, 2021, alleging that Premier Biotech was the cause of the harm suffered by Plaintiffs and that which has or will be suffered by the purported Plaintiff Classes. The Complaint alleges a single claim (Count IV) against Premier Biotech for negligence. For the reasons stated below, Count IV fails as a matter of law to state a claim for which relief can be granted.

## LAW AND ARGUMENT

### I. Legal Standard.

Federal Rule of Civil Procedure 12(b)(6) authorizes a defendant to move to dismiss an action for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), a complaint must assert a "plausible" claim and

contain "sufficient factual matter" to support it. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged- but it has not 'show[n]'-'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679, quoting Fed. R. Civ. P. 8(a)(2).

"[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Further, when accepting all factual allegations in the plaintiffs' complaint as true, a court need not "accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678. A dismissal for failure to state a claim pursuant to Rule 12(b)(6) is appropriate if, the "[f]actual allegations [are not] enough to raise a right to relief above the speculative level, … on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (internal citations omitted). In evaluating a motion to dismiss, "[t]he jurisprudence of Rule 12(b)(6) requires [a district court] to consider not only the complaint, but also matters fairly incorporated within it and matters susceptible to judicial notice." *Cruz*, 204 F.3d at 21-22, citing *Beddall v. State St. Bank Trust Co*., 137 F.3d 12, 16-17 (1st Cir. 1998).

## II. <u>Plaintiffs Fail to State a Claim for Negligence Against Premier Biotech.</u>

Under Massachusetts law, to establish a claim for negligence a plaintiff must demonstrate (1) a duty owed by the defendant to the plaintiff; (2) a breach of such duty; and (3) injury to the plaintiff caused by the defendant's breach. *Glidden v. Maglio*, 430 Mass. 694, 696 (2000); *see*

*also* Restatement (Second) of Torts, § 281 (1965).  As such, a negligence allegation cannot stand unless it shows "the existence of an act or omission in violation of a duty owed to the plaintiff by the defendant."  *See Cottam v. CVS Pharmacy*, 436 Mass. 316, 320 (2002), *quoting Dinsky v. Framingham*, 386 Mass. 801, 804 (1982); *Westerback v. Harold F. LeClair Co., Inc.*, 50 Mass. App. Ct. 144, 146 (2000); *see also Glidden*, 430 Mass. at 696 (causation is an essential element of proof in a negligence claim).  "Before liability for negligence can be imposed, there must first be a legal duty owed by the defendant to the plaintiff and a breach of that duty proximately resulting in the injury."  *Davis v. Westwood Group*, 420 Mass. 739, 742-43 (1995).  The existence of a duty is a question of law for the Court to decide.  *Cottam v. CVS Pharmacy*, 436 Mass. 316 (2002).

### A. The Complaint fails to state a claim because it does not plausibly allege that Plaintiffs' alleged harm was caused by Premier Biotech.

Plaintiffs' negligence allegation fails because Plaintiffs do not allege facts from which they could prove that their harm was caused by Premier Biotech.  To prevail on their claim, Plaintiffs ultimately must prove that the alleged negligence of Premier Biotech – *i.e.*, supplying products with an allegedly high false result rate – was the proximate cause of Plaintiffs' harm.  *See Delaney v. Reynolds*, 63 Mass. App. Ct. 239, 241 (2005).  Yet even if Plaintiffs alleged as such (they have not), the negligence claim must be dismissed because the harm alleged by Plaintiffs is plainly the result of intervening actions taken by the DOC and its employees.

For example, the Complaint (at ¶ 42) states that it is the DOC that "impose[s] immediate punishment on incarcerated people."  Further, the Complaint alleges (at ¶ 44) that the DOC, at the direction of Commissioner Mici, "has been using Sirchie's tests on legal mail and relying on false positives to punish incarcerated people."  Similar allegations detailing the role of the DOC and its employees litter the Complaint.  (*See* Complaint, ¶¶ 48-49, 64, 69, 70-72, 74, 76, 79-81, 83-84, 86-94.)  The Complaint goes to great lengths to describe the unreasonable actions taken by the

DOC and its employees to punish Plaintiffs – actions with which Premier Biotech had no involvement and for which Premier Biotech simply is not responsible.

Further, the Complaint admits that there are ways to avoid negative consequences for allegedly false positive results, acknowledging that the potential false results themselves are not the cause of any harmful ramifications. For instance, Plaintiffs acknowledge that inmates (or the DOC, for that matter) may have the purported false positives evaluated using laboratory testing. (Complaint, at ¶ 49.) Having the Sirchie test results evaluated by laboratory testing is exactly what Premier Biotech instructs all purchasers of the Sirchie products to do. Premier Biotech makes clear that the DOC is *not* supposed to rely on test results for conclusive proof of the presence of narcotics. *See* Michalik Aff., Exhibit A (NARK II Brochure), at p. 5. Premier Biotech also expressly tells its customers that the NARK II could result in false positives and false negatives, and that "[a] forensic laboratory is *required* to qualitatively and quantitatively identify an unknown substance." *Id*. (emphasis added). This same warning appears on all of Premier Biotech's NARK-related promotional materials. *See* Michalik Aff., Exhibit B (NARK Presumptive Drug Identification), at p. 1; Michalik Aff., Exhibit C (Introduction to NARK Presumptive Drug Analysis), at p. 2. Consistent with such a position, other courts have determined that it is laboratories who are in the best position to prevent harm related to false test results. *See Landon v. Kroll Lab. Specialists, Inc.*, 22 N.Y.3d 1 (2013); *Shaw v. Psychmedics Corp.*, 426 S.C. 194, 199 (2019). That makes sense. Premier Biotech, however, is not a laboratory and did not conduct the tests complained of in the Complaint nor did it manufacture the products used for the tests.

Premier Biotech cannot control whether or not Sirchie purchasers, such as the DOC, follow the clear instructions included in the promotional material. Indeed, because the DOC and its employees apparently chose not to follow Premier Biotech's own warning and rely on potential

false test results to implement punishments without obtaining confirmation from laboratory results, the resulting harm to the Plaintiffs and the proposed Classes was caused by the DOC and those issuing discipline, not by Premier Biotech.  The Plaintiffs' Complaint implicitly acknowledges this reality as well.  Plaintiffs allege (at ¶¶ 20, 111) that the Sirchie NARK tests reveal "presumptive" results.  The very nature of the tests as revealing "presumptive" results directly reflects that the results are not to be relied upon as definitive or conclusive.  Thus, the conduct by Premier Biotech plainly was not the cause in fact of Plaintiffs' alleged injuries.

In addition to being the cause in fact of the injury, the plaintiff must show that Premier Biotech's allegedly negligent conduct was a proximate or legal cause of the injury as well.  "[O]ne cannot be held liable for negligent conduct unless it is causally related to injury of the plaintiff." *Wainwright v. Jackson*, 291 Mass. 100, 102 (1935); *Glidden v. Maglio*, 430 Mass. 694, 696 (2000) (causation "is an essential element" of proof of negligence).  Whether negligent conduct is the proximate cause of an injury depends on whether the injury to the plaintiff was a foreseeable result of the defendant's negligent conduct.  *Jesionek v. Massachusetts Port Auth.*, 376 Mass. 101, 105 (1978).  The DOC employee actions instituting punishment based solely on the NARK products – when Premier Biotech expressly states that the products require forensic laboratory confirmation – are intervening causes that were not reasonably foreseeable to Premier Biotech.  It is not reasonably foreseeable that the DOC and its employees would implement punishment based on NARK test results without confirming results with laboratory tests.

The mere fact that the DOC controlled the NARK tests and implemented the testing procedures alleviates Premier Biotech of any responsibility for the results of the tests.  The DOC assumed control of the NARK products and thereby assumed the responsibilities of administering the tests.  Premier Biotech never had such responsibilities, and to the extent there were any

obligations of Premier Biotech relating to the administration of the tests, such obligations were eliminated when the DOC took exclusive possession of the testing products. Because any duty relating to the NARK tests was transferred to the DOC, a law enforcement agency that could reasonably be relied on to perform its responsibilities, the element of proximate cause as to Premier Biotech was extinguished. The subsequent actions by the DOC thus relieve Premier Biotech of any liability. Restatement (Second) of Torts § 452(2) ("where . . . the duty to prevent harm to another threatened by the actor's negligent conduct is found to have shifted from the actor to a third person, the failure of the third person to prevent such harm is a superseding cause").

Premier Biotech had no involvement with the testing, analysis, interpretation of results, or resulting punishments of inmates issued by the DOC. It was the DOC's decisions that subjected Plaintiffs to their purported harm. Since the DOC's actions constitute intervening harm, the negligence claim against Premier Biotech should be dismissed.

### B. The Complaint fails to state a claim because it does not plausibly allege that Premier Biotech breached a duty owed directly to Plaintiffs.

It is well-accepted that each Plaintiff, individually and on behalf of the purported classes, must allege and demonstrate that Premier Biotech owed each a duty of care in order to have an actionable claim for negligence. *Lev v. Beverly Enterprises-Mass. Inc*., 457 Mass. 234, 240 (2010) (absent a legal duty owed by defendant, there is no actionable claim for negligence).

Plaintiffs' negligence allegation against Premier Biotech is premised solely on the sale of presumptive testing products to the DOC that were allegedly defective. The relevant claims against Premier Biotech are detailed in paragraphs 128-131:

- ¶ 128: "Defendant Premier Biotech owed a duty to Plaintiffs and the Classes *to sell the DOC* drug testing devices . . . including *by adhering to the requirement in the DOC's request for bids* that the false positive rate for drug testing products must remain below .05%." (emphasis added)

- ¶ 129: "Defendant Premier Biotech owed this duty to Plaintiffs and the Classes because Defendan[t] Premier Biotech knew or should have known that *selling drug testing products* with a high false positive rate to the DOC . . ." (emphasis added)

- ¶ 130: "Indeed, *pursuant to its contract with the DOC*, Premier Biotech agreed to, but did not, provide statements about the incidence of false positive results from Sirchie's tests along with its bid to sell the DOC those products." (emphasis added)

- ¶ 131: "Premier Biotech breached its duty to Plaintiffs and the Classes *by selling faulty tests to the DOC* . . . ." (emphasis added)

Plaintiffs further establish that Premier Biotech's only alleged liability is based on the contractual relationship with the DOC in their class allegations.  Specifically, Plaintiffs claim that the only question of law and fact common to each Class that relates to Premier Biotech is: "Whether Premier Biotech *negligently sold* Sirchie's tests to the DOC, despite their extremely high false positive and negative rates."  (Complaint, at ¶ 103.)

Each of Plaintiffs' factual claims against Premier Biotech relate explicitly to Premier Biotech's contract with the DOC and allege liability against Premier Biotech solely as a result of that contract.  But any alleged contract between Premier Biotech and the DOC does not save Plaintiffs' claims in this instance, because a contract with a separate entity does not create a duty of care for tort law purposes as to non-signatories where there is no additional independent duty of care.  *See Anderson v. Fox Hill Vill. Homeowners Corp.*, 424 Mass. 365, 368 (1997) ("failure to perform a contractual obligation is not a tort in the absence of a duty to act apart from the promise made"); *Goulart v. Canton Hous. Auth.*, 57 Mass. App. Ct. 440, 445 (2003) ("Even breach of a contractual obligation . . . does not create a duty in tort.").[2]

---

[2]       In addition, Plaintiffs cannot claim that they were somehow third-party beneficiaries of the contract between Premier Biotech and the DOC.  That contract was for a sale of goods. (Complaint, at ¶ 18.)  While Plaintiffs may be impacted by the use of such goods by the DOC, it is not alleged that the specific Plaintiffs were identified by the Premier Biotech contract and that

Nor, as discussed above, is Premier Biotech responsible for the actions of the DOC and its employees.  It is well-established in Massachusetts "that there is no duty to control another person's conduct to prevent that person from causing harm to a third party." *Leavitt v. Brockton Hosp., Inc.*, 454 Mass. 37, 40–41 (2009); Restatement (Second) of Torts § 315.[3]  Simply put, even if the Sirchie tests that Premier Biotech sold the DOC did not work as alleged by Plaintiffs, Premier Biotech had no duty to Plaintiffs relative to those sales.

Because the Complaint is devoid of any allegations that Premier Biotech owes an independent duty to any of the Plaintiffs, the Court should dismiss Count IV of the Complaint for failure to state a claim on which relief can be granted.

## CONCLUSION

Plaintiffs have failed to plausibly allege any theory of negligence against Premier Biotech. On the contrary, Plaintiffs' allegations in the Complaint establish that Premier Biotech had a contractual agreement with the DOC that did not bestow a duty on Premier Biotech in relation to numerous unknown inmates and potential inmates across Massachusetts.  There can be no negligence when Premier Biotech owes no duty to Plaintiffs in the first place.  Likewise, Plaintiffs' Complaint alleges no fact sufficient to show that Premier Biotech had any role in the manufacturing, administration, use, or disciplinary decisions stemming from the DOC's use of the products at issue, and therefore there can be no logical basis to allege that Premier Biotech caused

---

the Plaintiffs were specifically intended to be beneficiaries of the sale of the goods. *See Anderson v. Fox Hill Vill. Homeowners Corp.* 424 Mass. 365, 366-367 (1997) (there must be explicit or implied intent of the contracting parties to give plaintiffs "the benefit of the promised performance").

[3]    The recognized exceptions to this general rule are employer-host liability or when there exists a "special relationship" between the plaintiff and defendant. *Lev*, 457 Mass. at 236.  No exception applies to the relationship between Premier Biotech and the Plaintiffs here.

any harm to the Plaintiffs at all.  For the foregoing reasons, Premier Biotech respectfully requests that Count IV of Plaintiffs' Complaint be dismissed, with prejudice.

Respectfully submitted,

/s/ Shepard Davidson
Shepard Davidson, Esq. (BBO#557082)
sdavidson@burnslev.com
Michael A. DeIulis, Esq. (BBO #691495)
mdeiulis@burnslev.com
BURNS & LEVINSON LLP
125 High Street
Boston, MA 02110
(617) 345-3000

Joseph M. Windler, Esq., #0387758 (MN)
jwindler@winthrop.com
*Pro Hac Vice Application Pending*
Devon C. Holstad, Esq., #559221 (NY)
dholstad@winthrop.com
*Pro Hac Vice Application Pending*
WINTHROP & WEINSTINE, P.A.
225 South Sixth Street Suite 3500
Minneapolis, Minnesota 55402
(612) 604-6400

*Attorneys or Defendant*
*Premier Biotech, Inc.*

Dated:  September 21, 2021

## CERTIFICATE OF SERVICE

I, Michael A. DeIulis, hereby certify that this document filed through ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on September 21, 2021.

/s/ Michael A. DeIulis
Michael A. DeIulis (BBO#691495)