UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JULIAN GREEN, EUGENE IVEY, JAMES P. MCKENNA, and LISA NEWMAN-POLK, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> SIRCHIE ACQUISITION CO. LLC, and PREMIER BIOTECH, INC., <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) Civil Action No. 21-11504 ) ) ) ) ) ) |

**MEMORANDUM IN SUPPORT OF**
<u>**SIRCHIE ACQUISITION CO. LLC'S MOTION TO DISMISS**</u>

Defendant Sirchie Acquisition Co. LLC ("Defendant" or "Sirchie"), by and through its undersigned counsel, respectfully submits this Memorandum in support of its Motion to Dismiss ("Motion") Plaintiffs Julian Green ("Green"), Eugene Ivey ("Ivey"), James P. McKenna ("McKenna") and Lisa Newman-Polk's ("Newman-Polk") (collectively, "Plaintiffs") First Amended Class Action Complaint (the "Complaint") pursuant to Fed. R. Civ. P. 12(b)(1), (6). Sirchie also requests entry of final and separate judgment in its favor pursuant to Fed. R. Civ. P. 54(b).

**I.   Preliminary Statement**

Sirchie is the manufacturer and distributor of the NARK II Presumptive Drug Test Kit ("NARK II Test Kit") which is sold to law enforcement customers, not the general public, as a portable kit for the purpose of testing for illegal narcotics at the scene. Sirchie warns its consumers on the packaging for the product as well as on its website that false positives are a possibility and therefore the consumer must have a forensic laboratory test the substance at issue and verify the

results of the NARK II Test Kit. Sirchie has no control over the manner in which law enforcement administers the test or interprets the results, or the length of time it takes an independent laboratory to verify the results. Significantly, the determination whether to discipline an inmate or his/her attorney (in this case the Plaintiffs), the circumstances surrounding an inmate's detention (i.e., Green and Ivey), and the resulting effect of such detention on an inmates future are matters outside of Sirchie's control.

Plaintiffs' purported claims against Sirchie fail because Plaintiffs have not properly alleged any claim to support a cognizable cause of action against Sirchie pursuant to Fed. R. Civ. P. 12(b)(6) and, as to McKenna and Newman-Polk, for lack of Article III standing. Therefore, as set forth below, Plaintiffs' Complaint against Sirchie should be dismissed and separate and final judgment should enter in its favor.

## II.   Factual Allegations

Plaintiffs' action arises out of allegedly inaccurate results of certain presumptive drug tests conducted by the Massachusetts Department of Correction (the "DOC"). *See* Complaint, ¶¶1-4. The allegedly inaccurate results were obtained using the NARK II Test Kit that is manufactured by Sirchie. *See* Complaint, ¶10. The NARK II Test Kit provides "**presumptive** identification" of eight synthetic cannabinoids. *See* Complaint, ¶15 (emphasis added). The NARK II Test Kit is intended for presumptive identification and not as conclusive evidence of the presence of drugs. Incredibly, it is not alleged that Sirchie promotes the NARK II Test Kit as conclusive proof of the presence of drugs.

The DOC purchased the NARK II Test Kits from Defendant Premier Biotech, Inc. ("Premier"), a supplier of the NARK II Test Kit. *See* Complaint, ¶¶13, 29. Notably, the brochure of the NARK II Test Kit sold to the DOC states:

> **Presumptive identification is generally recognized within our legal system as a component of probable cause. There is no drug**

> **identification system presently in use which completely eliminates the occurrence of false positives and false negatives. A forensic laboratory is required to qualitatively and quantitatively identify an unknown substance.**

*See* Dkt. No. 14-1, at 5.

Moreover, the <u>same</u> warning appears on all of Premier's NARK-related promotional materials given to the DOC before the DOC's purchase of the NARK II Test Kit. *See* Dkt. No. 14-2, at 1 ("…A forensic laboratory is required to qualitatively and quantitatively identify an unknown substance."); Dkt. No. 14-3, at 2 ("…A forensic laboratory is required to qualitatively and quantitatively identify an unknown substance."). In fact, the packaging of the NARK II Test Kit at issue states the same warning (see packaging below)[1]:

> **NOTE:** ALL TEST RESULTS MUST BE CONFIRMED BY AN APPROVED ANALYTICAL LABORATORY! The results of this test are merely presumptive. NARK only tests for the possible presence of certain chemical compounds. Reactions may occur with, and such compounds can be found in, both legal and illegal products. This test must be administered following its specific instructions and may be used in conjunction with other reagents in the NARK II Sequential Testing System.

---

[1] Because the information on the packaging were referenced and relied on by Plaintiffs in the Complaint (at ¶¶20-21), they may be relied on by the Court in deciding the Motion to Dismiss. *Cruz v. Melecio*, 204 F.3d 14, 21-22 (1st Cir. 2000) (any document fairly incorporated into the Complaint may be considered on a Motion to Dismiss).





Further, it is undisputed that Sirchie did not sell any NARK II Test Kits directly to the DOC or that any of the NARK II Test Kit at issue in this action were obtained by the DOC directly from Sirchie. *See* Complaint, ¶¶13, 29.

Plaintiffs allege that the DOC used the NARK II Test Kit to conduct tests to pieces of mail sent to Green and Ivey. *See* Complaint, ¶4. Plaintiffs claim that the NARK II Test Kit returned positive results and that the DOC, through its employees, disciplined Green and Ivey without obtaining laboratory confirmation of the positive test results. *See* Complaint, ¶¶33-37, 44-50, 54-60. Notably, Plaintiffs do not allege that Sirchie took part in the use of the NARK II Test Kits at issue or in any of the disciplinary decisions levied against Plaintiffs because Sirchie did not do so. Also, McKenna and Newman-Polk allege that they were threatened with discipline and that their alleged clients are now refusing "legal mail – their main form of communication with their counsel…" *See* Complaint, ¶¶3-4, 43, 70. However, it is undisputed that McKenna and Newman-Polk were able to communicate with their clients using other methods than U.S. mail and that neither suffered any disciplinary action against them.

On July 28, 2021, Plaintiffs filed their Complaint alleging a claim of negligence against Sirchie (Count III). Sirchie removed the action to this Court on September 14, 2021. On October 4, 2021, Plaintiffs filed their First Amended Complaint alleging claims of negligence (Count I) and violation of G.L. c. 93A (Count III). *See* Dkt. No. 26, ¶¶85-89, 96-104. For the reasons stated below, Plaintiffs' claims against Sirchie fails as a matter of law due to their failure to state a claim against Sirchie for which relief can be granted. Plaintiffs' Complaint should also be dismissed as to McKenna and Newman-Polk for the lack of Article III standing.

### III. Argument

**A. Motion to Dismiss for Lack of Standing**

1. <u>Fed. R. Civ. P. 12(b)(1) Legal Standard.</u>

Rule 12(b)(1) is "[t]he proper vehicle for challenging a court's subject-matter jurisdiction" including a claim that the plaintiff lacks Article III standing. *In Re Lantus Direct Antitrust Litig.*, 2020 U.S. Dist. LEXIS 240574 (D. Mass. 2020) quoting *Valentin v. Hosp. Bella Vista*, 254 F.3d 358, 362 (1st Cir. 2001). A plaintiff must have standing to bring each and every claim that she asserts. *Katz v. Pershing, LLC*, 672 F.3d 64, 71 (1st Cir. 2012); *Pagan v. Calderon*, 448 F.3 16, 26 (1st Cir. 2006); *In re Nexium Antitrust Litig.*, 777 F.3d 9, 31 (1st Cir. 2015) ("*Nexium II*") (Article III standing is an indispensable part of any case that must be present at every stage of the case). A plaintiff carries the burden of proving standing by establishing the existence of three elements: (1) the plaintiff must have suffered an "injury-in -act" or an invasion of a legally protected interest; (2) there must be a causal connection between the plaintiff's injury and the defendant's conduct; and (3) it must be likely that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992); *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) . Where the question of standing is based on the pleadings, the plaintiff bears the burden of establishing sufficient factual matter to plausibly demonstrate his standing to bring the action. *Hochendoner v. Genzyme Corp.*, 823 F.3d 724, 731 (1st Cir. 2016).

Significantly, that a suit may be a purported class action adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that the injury has been suffered by other, unidentified members of the class to which they belong. *Spokeo*, 136 S. Ct. at 1547, n. 6; *In re Nexium (Esomeprazole) Antitrust Litig.*, 968 F. Supp. 2d 367, 403-404 (D. Mass. 2013) ("*Nexium I*").

To establish injury-in-fact, a plaintiff must show that he or she suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Spokeo*, 136 S. Ct. at 1548 quoting *Lujan*, 504 U.S. at 560; *Benjamin v. Aroostook Med. Ctr., Inc.*, 57 F.3d 101, 104 (1st Cir. 1995). The requirement of an actual or imminent injury ensures that the harm has either happened or is sufficiently threatening; it is not enough that the harm might occur at some future time. *Katz*, 672 F3.d at 71.

2. <u>McKenna and Newman-Polk Fail to Allege Injury-in-Fact.</u>

McKenna and Newman-Polk (the "Attorney Plaintiffs") admit that neither of them (1) suffered disciplinary action against them (it was allegedly just threatened) or (2) were prevented from contacting and reaching their clients (rather, it was allegedly just more difficult). *See* Complaint, ¶¶3-4, 43, 70. Moreover, the Attorney Plaintiffs admit that the crux of their claim is that the actions of the Attorney Plaintiffs caused the harm allegedly sustained by Green and Ivey (the "Inmate Plaintiffs"), not that the Attorney Plaintiffs have sustained the harm complained of themselves. *See* Complaint, ¶¶3-4, 43, 50, 69-71.

The Attorney Plaintiffs, who have not been injured and/or damaged, seek to sue the manufacturer on the basis that they may be injured. However, the Attorney Plaintiffs admit that they have no issue reaching their clients and have not been punished by the DOC (or accused of any criminal action that could jeopardize their license to operate as an attorney). *See* Complaint, ¶¶3-4, 43, 48, 50, 62, 66, 69-71. The Attorney Plaintiffs' allegations only support the contention that the inability to send mail to their client are unsatisfactory and burdensome to them (however, the Attorney Plaintiffs can still meet in person with their client or speak through a telephone line). As such, the Attorney Plaintiffs have failed to allege that they have suffered an injury in fact as no invasion of any legally protected interest occurred and any threatened discipline is conjectural or

hypothetical. *Spokeo*, 136 S. Ct. at 1548 quoting *Lujan*, 504 U.S. at 560 (to establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical). For these reasons, the Attorney Plaintiffs have no viable claims for relief against Sirchie.

3. <u>Attorney Plaintiffs Fail to Allege an Injury Fairly Traceable to a Challenged Action.</u>

The causation element "requires the plaintiff to show a sufficiently direct causal connection between the challenged action and the identified harm." *Katz*, 672 F.3d at 71. Such a connection cannot be "overly attenuated." *Id.*, quoting *Donahue v. City of Boston*, 304 F.3d 110, 115 (1st Cir. 2002). Because the opposing party must be the source of the harm, causation is absent if the injury stems from the independent action of a third-party. *Id.*, citing *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26 (1976). Even when third-parties are not involved, the causation requirement may be satisfied when a consumer purchases a falsely advertised product because the defendant's misrepresentations would have artificially inflated the price the consumer paid. *Rule v. Fort Doge Animal Health, Inc.*, 607 F.3d 150 (1st Cir. 2010).

The Attorneys Plaintiffs cannot link their own alleged harm to Sirchie's conduct or alleged wrongdoing because Sirchie (1) did not sell them anything (or to the DOC for that matter), (2) was not involved in the DOC's decision to threaten them, and (3) was not involved in any policies or decisions which prevented mail from reaching the Inmate Plaintiffs. As such, it is clear that Sirchie did not have control over the imposition or enactment of any of the third-party's (i.e., the DOC) policies. *Katz*, 672 F.3d at 71 citing *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26 (1976) (because the opposing party must be the source of the harm, causation is absent if the injury stems from the independent action of a third-party); *Barry v. St. Paul Fire & Marine Ins. Co.*, 555 F.2d 3, 13 (1st Cir. 1977) (named plaintiffs seeking to represent classes of doctors and patients in antitrust

case against four insurance companies could not maintain claims against two of the defendants where there was no evidence that any named plaintiff ever bought a policy from either company or was ever treated by a doctor holding such a policy); *In re Organogenesis Sec. Litig.*, 241 F.R.D. 397, 403-405 (D. Mass. 2007) (ruling that named plaintiff did not have standing to maintain class claims against defendant whose individual conduct could not have caused any harm to the named plaintiff).

The Attorney Plaintiffs contend that their harm was caused directly by Sirchie's conduct. However, it is clear that any harm allegedly sustained by the Attorney Plaintiffs was caused by the DOC's policies in place (which was not under the control of Sirchie). There is no evidence that (1) Sirchie did not advise suppliers or prospective customers that its NARK II Test Kit was a presumptive test that required laboratory confirmation (it did so based on the brochure materials received by the DOC), or (2) Sirchie advertised NARK II Test Kits as conclusive drug tests that did not require any laboratory confirmation (again, it did so, multiple times, including on its own product packaging). As such, it is undisputed that Sirchie did not misrepresent the capabilities of the NARK II Test Kits at any time. *See* Dkt. No. 14-1, at 5; 14-2, at 1; 14-3, at 2. It follows that there is no causal connection to the DOC's policies at issue in this action as there were no misrepresentations of the NARK II Test Kits. *Rule v. Fort Doge Animal Health, Inc.*, 607 F.3d 150 (1st Cir. 2010) (Even when third-parties are not involved, the causation requirement may be satisfied when a consumer purchases a falsely advertised product because the defendant's misrepresentations would have artificially inflated the price the consumer paid). Accordingly, the claims against Sirchie should be dismissed.

**B. Motion to Dismiss for Failure to State a Claim**

1. Fed. R. Civ. P. 12(b)(6) Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Aschroft v. Iqbal*, 556 U.S. 662, 678 (2009) quoting *Twombly*, 550 U.S. at 570. An entitlement to relief is "plausible" if the facts "raise a reasonable expectation that discovery will reveal evidence" of the alleged misconduct, "even if it strikes as savvy judge that actual proof of those facts is improbable, and that recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556; *Ocasio-Hernandez v. Fortuño-Burset*, 640 F.3d 1, 17 (1st Cir. 2011).

Rule 12(b)(6) requires a plaintiff to plead facts which "raise [her] right to relief above the speculative level." *Twombly*, 550 U.S. at 545. This requires "more than labels and conclusions, and a formulaic recitation of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (court can discard legal conclusions, conclusory statements, and factually threadbare recitals of the elements of a cause of action); *Maldonado v. Fontanes*, 568 F.3d 263, 268 (1st Cir. 2009) (court need not accept as true legal conclusions from the complaint or naked assertions devoid of further factual enhancement). A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 664. Moreover, *Iqbal*, *Comcast v. Behrend*, 569 U.S. 27 (2012), and *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) have raised the bar for alleging claims suitable for class treatment.

2. <u>The Negligence Claim Fails as There is No Duty Owed to Plaintiffs</u>

Plaintiffs allege a claim of negligence against Sirchie. *See* Complaint, ¶¶85-89. To establish a claim for negligence, a plaintiff must demonstrate (1) a duty owed by the defendant to the plaintiff, (2) a breach of such duty, and (3) injury to the plaintiff caused by the defendant's breach. *Glidden v. Maglio*, 430 Mass. 694, 696 (2000). A negligence claim cannot stand unless it shows "the existence

of an act or omission in violation of a duty owed to the plaintiff by the defendant." *Cottam v. CVS Pharm*., 436 Mass. 316, 320 (2002) quoting *Dinsky v. Framingham*, 386 Mass. 801, 804 (1982); *Westerback v. Harold F. LeClair Co., Inc*., 50 Mass. App. Ct. 144, 146 (2000). Further, "before liability for negligence can be imposed, there must first be a legal duty owed by the defendant to the plaintiff and a breach of that duty proximately resulting in the injury." *Davis v. Westwood Group*, 420 Mass. 739, 742-743 (1995); *Lev v. Beverly Enterprises-Mass., Inc*., 457 Mass. 234, 240 (2010) (absent a legal duty owed by defendant, there is no actionable claim for negligence). The existence of a duty is a question of law for the Court to decide. *Cottam*, 436 Mass. at 320.

Plaintiffs' claim relies exclusively on Sirchie manufacturing the NARK II Test Kit. *See* Complaint, ¶¶85-89. However, the fact that Sirchie manufactured the NARK II Test Kit does not create a duty. It is well established that "there is no duty to control another person's conduct to prevent that person from causing harm to a third-party." *Leavitt v. Brockton Hosp., Inc*., 454 Mass. 37, 40-41 (2009). Here, it is undisputed that Sirchie did <u>not</u> control the DOC's actions at any time. First, as mentioned, Sirchie had no control over the DOC or its employees and, on that basis alone, Sirchie does not owe the Plaintiffs a duty of care. Second, Plaintiffs fail to allege how Sirchie allegedly injured the Plaintiffs. While Plaintiffs claim that Sirchie knew or should have known of the false positive results and where or on whom the products would be used on, Plaintiffs do not allege that such knowledge (if any) created a duty over the DOC (a third-party).

Moreover, Plaintiffs attempt to mislead the Court as to the warnings and nature of the product by failing to acknowledge that the brochures for Sirchie's products, including the NARK II Test Kits, all advised and warned that the product is a <u>presumptive</u> test and <u>any results must be confirmed by a laboratory</u>. *See* Dkt. No. 14-1, at 5; 14-2, at 1; 14-3, at 2. Regardless of what Sirchie should have done or known, as alleged by Plaintiffs, the fact is that all consumers, including the

DOC, were aware of the presumptive nature of the products and the requirement to confirm any results by a laboratory. Further, any allegations that Sirchie "assumed responsibility for training DOC employees on the use of its test" is simply false because such training was not required by any statute, regulation or Sirchie (if the DOC chose to make such training mandatory, that is again outside of Sirchie's control). In any event, such allegations do nothing to help Plaintiffs obtain an exception to long standing precedent that there is no duty to control a third-party from harming another. *Leavitt*, 454 Mass. at 40-41. Accordingly, because there is no duty owed to Plaintiffs by Sirchie, their negligence claim fails as a matter of law.

3. The Negligence Claim Fails as Sirchie's Conduct Did Not Proximately Cause Any Harm

It is well established that "one cannot be held liable for negligent conduct unless it is casually related to injury of the plaintiff." *Geary*, 20 Mass. L. Rep. at *241. Moreover, proximate cause may be determined as a question of law when there is no dispute as to the effect of the facts established. *Kent v. Commonwealth*, 437 Mass. 312 (2002) (if a series of events occur between the negligent conduct and the ultimate harm, the court must determine whether those intervening events have broken the chain of factual causation or, if not, have otherwise extinguished the element of proximate cause and become the superseding cause of the harm). A superseding cause is an act of a third person or other force which by its intervention prevents the actor from being liable for harm to another, which his antecedent negligence is a substantial factor in bringing about. *Jones v. Cincinnati, Inc.*, 32 Mass. App. Ct. 365 (1992).

Here, Plaintiffs' negligence claim fails because there are no facts that can prove their harm was caused by Sirchie. In order to prevail, Plaintiffs must prove that the negligence of Sirchie (i.e., manufacturing products with high false result rate) was the proximate cause of Plaintiffs' harm. However, even though Plaintiffs have not alleged such allegations, it is undisputed that any harm

allegedly sustained by the Plaintiffs is the result of intervening actions taken by the DOC and its employees.

Plaintiffs allege that the DOC "impose[s] severe and immediate punishments" on incarcerated people, that the DOC has been "relying on false positives to punish incarcerated people" and, generally, that the DOC's policies and conduct is the source of the alleged harm. *See* Complaint, ¶¶3-4, 33, 44-47, 49, 51, 55-57, 59-60, 62-71, 79. In fact, Plaintiffs allege throughout the Complaint that it was the DOC's own actions that caused the alleged harm (which Sirchie had no control over or involvement with).

Moreover, Plaintiffs allege that a cause of the harm was not the false positives of the NARK II Test Kits but, rather, the inmates own choice not to pursue the recommendations given to them by the DOC's employees (i.e., the inmates refusal to have the initial results evaluated by a laboratory). *See* Complaint, ¶56. The NARK II Test Kit advises that it's a presumptive test that must be corroborated by a laboratory. *See* Dkt. No. 14-1, at 5; 14-2, at 1; 14-3, at 2. It is undisputed that the DOC received such documentation and warnings of the presumptive nature of the NARK II Test Kit. On this basis alone, it is clear that the superseding cause of Plaintiffs alleged harm was the alleged failure of the DOC to acknowledge the presumptive nature of the NARK II Test Kit and/or follow the written instructions directing laboratory confirmation of any results obtained from the NARK II Test Kit.

While Plaintiffs allege that Sirchie provides training for its products, including the NARK II Test Kits, there is no requirement or statute that directs any consumer of the NARK II Test Kits to receive any training (nor have Plaintiffs allege that Sirchie's training was deficient per statutory or regulatory requirements). As such, any allegations that Sirchie's training caused the alleged harm is unfounded since (1) such training was not required, (2) Sirchie had no power to direct any training

be taken by the DOC's employees, and (3) Sirchie had no supervision requirements over the DOC's employees use of the NARK II Test Kit. Further, it is not reasonably foreseeable that the DOC would implement discipline based on presumptive test results without confirming results with laboratory tests. *Jesionek v. Mass. Port. Auth.*, 376 Mass. 101, 105 (1978) (whether negligent conduct is the proximate cause of an injury depends on whether the injury to the plaintiff was a foreseeable result of the defendant's negligent conduct). Finally, it is undisputed that the DOC controlled the use of the NARK II Test Kits and <u>solely</u> implemented the testing procedures and/or policies without input from Sirchie. Accordingly, because Sirchie did not proximately cause any harm to the Plaintiffs, the Plaintiffs' claims fail as a matter of law and should be dismissed.

4. <u>The c. 93A Claim Fails</u>

In order to establish a claim for violation of c. 93A, a claimant must prove the existence of an unfair or deceptive act. *Mechanics Nat'l Bank v. Killeen*, 377 Mass. 100 (1979). "The circumstances of each case must be analyzed, and unfairness is to be measured not simply by determining whether particular conduct is lawful [or unlawful…] apart from G. L. c. 93A but also by analyzing the effect of the conduct on the public [or the consumer]." *Id.*, quoting *Schubach v. Household Fin. Corp.*, 375 Mass. 133 (1978).

"In the absence of conduct that qualifies as unfair or deceptive, a negligent act or acts, alone, do not violate c. 93A." *Klairmont v. Gainsboro Rest., Inc.*, 465 Mass. 165, 176-177 (2013); *Darviris v. Petros*, 442 Mass. 274, 278 (2004) (plaintiffs' negligence-based medical malpractice claim did not qualify for redress under c. 93A:…"a violation of G. L. c. 93A requires, at the very least, more than a finding of mere negligence"); *Meyer v. Wagner*, 429 Mass. 410, 423-424 (1999) (no unfair or deceptive act where negligent legal representation alleged).

Here, apart from the c. 93A claim, all Plaintiffs allege is mere negligence. *See* Complaint, ¶¶85-89. On this basis alone, Plaintiffs' claim of a violation of c. 93A fails. *Klairmonti*, 465 Mass. at 176-177 ("In the absence of conduct that qualifies as unfair or deceptive, a negligent act or acts, alone, do not violate c. 93A."); *Darviris*, 442 Mass. at 278 ("a violation of G. L. c. 93A requires, at the very least, more than a finding of mere negligence"). Significantly, there is no evidence that Sirchie misrepresented the capabilities of the NARK II Test Kit. Rather, the opposite is true, Sirchie made all consumers (whom are not individual citizens but law enforcement personnel) aware, through brochures and on the product's packaging, of the presumptive nature of the NARK II Test Kit and that any results from such tests need to be confirmed by a laboratory. *See* Dkt. No. 14-1, at 5; 14-2, at 1; 14-3, at 2. Accordingly, Sirchie or its products did not partake in any unfair or defective practices and, as Plaintiffs' claims against Sirchie are predicated on mere negligence allegations, a violation of c. 93A fails as a matter of law.

## IV.     Request for Relief

**WHEREFORE**, for all the reasons discussed above, Sirchie respectfully requests that this Honorable Court (1) GRANT its Motion in its entirety and dismiss all claims against Sirchie; and (2) ENTER separate and final judgment in favor Sirchie pursuant to Fed. R. Civ. P. 54(b).

        Respectfully submitted,

        **SIRCHIE ACQUISITION CO. LLC**
        By its attorneys,

        <u>/s/      Kenneth B. Walton</u>
        Kenneth B. Walton (BBO No. 562174)
        Ken.Walton@lewisbrisbois.com
        **LEWIS BRISBOIS BISGAARD & SMITH LLP**
        One International Place, Suite 350
        Boston, MA 02110
        T: 857-313-3950
        F: 857-313-3951

Dated: October 8, 2021

## CERTIFICATE OF SERVICE

      I, Kenneth B. Walton, hereby certify that on October 8, 2021, a true and correct copy of the within document was served on all parties via the Electronic Case Filing System.

/s/   Kenneth B. Walton
Kenneth B. Walton