IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JULIAN GREEN and EUGENE IVEY, individually and on behalf of all other similarly situated,<br><br>*Plaintiffs,*<br><br>v.<br><br>SIRCHIE ACQUISITION CO. LLC, and PREMIER BIOTECH, INC.,<br><br>*Defendants.* | Case No. 1:21-cv-11504-GAO (JDH)<br><br>**JOINT STATUS REPORT** |

The parties respectfully submit the following joint status report in anticipation of the status conference set for February 27, 2025.

**NATURE OF THE CASE**

Plaintiffs Julian Green and Eugene Ivey are currently or were formerly incarcerated in facilities managed by the Massachusetts Department of Correction ("DOC"). They brought this action seeking compensation for damages caused when, they allege, they were wrongfully punished, including incarceration in disciplinary confinement, because of false positive results from Defendant's NARK 20023 field drug tests. Defendant Sirchie Acquisition Co. LLC ("Sirchie") manufactures and sells the NARK 20023 drug test, which it advertises as being able to identify synthetic cannabinoids. Defendant Premier Biotech, Inc. ("Premier") sold Sirchie's NARK 20023 drug tests to DOC from 2014 to 2022. DOC used NARK 20023 drug tests to test various substances and items, including mail addressed to incarcerated people, including Plaintiffs. Plaintiffs claim that the NARK 20023 was faulty and officers at DOC were not properly trained in how to use them.

Plaintiffs seek certification of a Recipient Class, as defined in the First Amended Class Complaint (the "Complaint," Dkt. 26), and they advance claims against both Sirchie and Premier for negligence and for violation of the Massachusetts Consumer Protection Law, General Laws

Chapter 93A. On September 28, 2022, the Court denied Defendants' motion to dismiss with respect to Plaintiffs. (Dkt. 66.)

Defendants deny all Plaintiffs' claims; Defendants deny making any misrepresentations or deceptive statements about the NARK 20023 and deny any negligence. Defendants allege that with every NARK 20023 field test, MADOC was warned and instructed by language on the test kits that "ALL TEST RESULTS MUST BE CONFIRMED BY AN APPROVED ANALYTICAL LABORATORY! The results of this test are merely presumptive." Defendants also deny the case is amenable to class adjudication, as each instance of testing of suspected contraband raises a host of individual issues (*e.g.*, was there a true false positive, did an individual plead guilty, was the individual disciplined, were there independent grounds for any discipline, etc.).

## **MATTERS TO BE DISCUSSED AT STATUS CONFERENCE**

The parties agree that the central issue to discuss at the case management conference is the state of discovery, mediation, and the case schedule.

### I.    PLAINTIFFS' POSITION

#### A.    State of Discovery

The parties have been working productively to move the case forward. The main impediment over the last year has been obtaining records from DOC, which has sole possession of documents demonstrating, among other things, how many times it used the defective test to punish class members. The parties' September 16, 2024 joint status report (Dkt. 160) provides a comprehensive summary of the parties' discovery dispute with DOC and Judge Dein's resolution, under which DOC was permitted to produce discovery related to 32 "exemplars" identified by the parties, which were intended to "serve as representative samples" of the rest of the class. (Dkt. 139 at 2.)

DOC has now produced discovery for all 32 exemplars. The parties then used those documents to take the deposition of DOC's 30(b)(6) witness on January 10, 2025.

Plaintiffs do not intend to seek additional fact discovery concerning class certification. (The cutoff for pre-certification-motion fact discovery was February 25, 2025.) Plaintiffs do foresee additional limited fact discovery concerning liability—specifically, information concerning DOC's training, testing practices, and contract management. This discovery would likely consist of two to four depositions of specific DOC staff who conducted particular tests, took Sirchie training courses, and drafted or approved the language in the contract under which Premier sold DOC NARK 20023 tests during the relevant period. (Plaintiffs learned about these individuals during DOC's 30(b)(6) deposition on January 10, 2025.) Plaintiffs may also seek a limited set of additional documents, such as lab certifications for all members of any class that is eventually certified in order to establish a false positive rate for NARK 20023 tests that were challenged. Finally, if class certification is granted, it may be necessary to conduct more extensive discovery into damages, depending on how damages are ultimately calculated for the class. For instance, if a flat recovery amount is set for each day an individual spent in restrictive housing following a positive NARK 20023 test, then it may be necessary for DOC to produce documents showing how many days each class member spent in such housing. (The current documents productions—including the d-reports for the entire purported class—do not provide definitive answers to these questions.)

      **B.**      **Mediation**

After months of loose conversations about the possibility of settlement discussions, all parties have agreed to engage in a mediation. Plaintiffs believe now is an opportune time to mediate, as most of the fact discovery related to class certification and liability is complete (allowing the parties to assess the strength of their positions) but the parties have not yet incurred most of the substantial costs and attorney's fees necessary for experts and class certification.

The parties have selected a mediator and are currently attempting to find a mediation date that works for everyone. Currently, a date in the second or third week of April appears most likely.

On February 20, the parties filed a joint motion to extend case deadlines by 90 days. (Dkt. 183.) Plaintiffs—who have a vested interest in moving this case along as quickly as possible—agree that this extension will help the parties reach an adequate resolution more efficiently by permitting them to focus on mediation without driving up litigation costs. Counsel for Plaintiffs have spoken to their clients about the pros and cons of mediation and their clients agree that an attempt at mediation is worth a modest delay in the case schedule.

### C. The Case Schedule

Plaintiffs seek clarification regarding the case schedule. As described more fully in past status reports, the parties originally sought comprehensive discovery from DOC—related to class certification, liability, and damages. After multiple hearings, Judge Dein split the discovery process into two segments—a pre-class-certification segment and a post-class-certification segment. The exemplar approach described in Judge Dein's Order—which the parties have followed to date—was intended to govern only the pre-class-certification segment. (*See* Dkt. 139 at 2 ("This [order] is intended to define the production of documents through any motion for class certification. After the resolution of any motion for class certification, the parties may seek additional discovery.").) No deadlines were set for post-class-certification discovery.

Since that time, the Court has modestly extended the fact discovery cutoff and has set expert discovery deadlines. (*See* Dkt. 183 at 2.). Plaintiffs seek to confirm that the Court still intends these deadlines to govern only the pre-class-certification phase of discovery pursuant to Judge Dein's Order. The parties have discussed this Order and agree that this is what Judge Dein intended.

Assuming that is correct, Plaintiffs believe the current expert discovery deadlines should be reset to a date following an order on class certification. There are three reasons. First, as noted above, the parties are attempting to mediate, and incurring potentially significant costs and additional attorney's fees related to experts would only make settlement more difficult. Second, which experts the parties retain will depend in part of the outcome of the Plaintiffs' class certification motion. For instance, if class certification is granted, Plaintiffs will need to retain an

4

expert to opine on class-wide damages, whom they would otherwise not need to retain. Third, some of the documents and information Plaintiffs anticipate collecting during the liability segment of discovery will be important for the experts to consider in forming their opinions. For instance, Plaintiffs have retained an expert to opine on the reliability of NARK 20023 tests, and her opinion will benefit from a broader range of lab certifications from DOC.

For these reasons, Plaintiffs believe expert discovery deadlines should follow a hearing on class certification.[1]

## II.  PREMIER'S POSITION

### A.  The state of discovery

Discovery is almost complete. However, as a result of information learned at the recent depositions of the named Plaintiffs and MADOC's representative, Premier identified and has been pursuing a few discrete matters of follow-up discovery:

- **ROGs to Sirchie re true positive tests.** On December 20, 2024, Premier sent Sirchie a second set of interrogatories, focused on which tests from the exemplar sets are true positives by the manufacturer's standards. Premier is awaiting a response.

- **NARK training records for: (a) the officers who conducted the named Plaintiffs' tests; and (b) MADOC's representative.** On February 4, 2025, Premier requested from MADOC the training records related to the NARK field tests for the two officers who conducted the named Plaintiffs' tests as well as for MADOC's representative, Lt. Turgeon. We had previously received training certifications for MADOC officers produced by Sirchie, but following the recent depositions, we understand additional or different trainings occurred over the years, and the nature and extent of these trainings are relevant to Plaintiffs' claims against the Defendants related to alleged training inadequacies. For instance, MADOC's representative claimed she received relevant training dating back to 2007, which is well before Sirchie developed the video training format it currently uses. Counsel for MADOC objected to the request on privacy grounds and/or burden grounds. Premier intends to continue to meet and confer with MADOC on this matter and attempt to find an agreeable solution; if the parties cannot agree, motion practice may be necessary.

---

[1] Alternatively, the Court could order DOC to produce all relevant documents now, as Plaintiffs originally requested. Plaintiffs are not arguing for that approach here because Judge Dein rejected it when she selected the exemplar approach Premier proposed last year.

- **Video of recorded exemplar disciplinary hearing.** On January 22, 2025, Premier requested that MADOC supplement the exemplar production to include any video recordings of any disciplinary hearings. Premier did not know of the existence of this video until after it received MADOC's exemplar productions. In Premier's view, the recordings are within the scope of the parties' agreed framework for exemplar discovery. (*See* Joint Submission [ECF 140] 3.) In a meet and confer addressing the matter, MADOC opposed the request on burden grounds. Premier intends to continue to meet and confer with MADOC on this matter and attempt to find an agreeable solution; if the parties cannot agree, motion practice may be necessary.

Each of the matters above remains unresolved. Given Plaintiff's suggestion that the parties mediate and the parties' agreement to do so and mindful of the burdens on nonparty MADOC, Premier has delayed seeking Court intervention as the discovery disputes may be rendered moot. If mediation is unsuccessful, the short extension of discovery is requested to allow the parties to continue to meet and confer, address these requests, and seek to resolve them.

### B.   Mediation

In late January of 2025 following the recent depositions, Plaintiffs reached out to Defendants to inquire about the possibility of mediation. The Defendants agreed to mediate; Premier did so with the understanding that this would be an effort to avoid further costs and expenses related to expert and class certification workup. The parties have selected a mediator and are working to find a mutually agreeable date, likely in mid-April. As the parties jointly sought in their motion, Premier believes an extension of all case deadlines would foster a most productive mediation and conserve resources for a potential settlement.

### C.   Case schedule

Premier agrees with Plaintiffs' understanding of Judge Dein's order—that discovery is to take place in two phases, one for pre-certification ruling and one post-certification ruling. Premier understands that the post-certification-ruling discovery may involve a mix of merits and damages issues, but requests further guidance from the Court on the intended timing and scope of the second phase of discovery.

Premier believes that expert reports will be necessary in advance of class certification. The Court previously set expert-disclosure deadlines, and in the Parties' joint motion for an extension of deadlines, the Parties all agreed that expert discovery should be moved by 90 days—not deferred indefinitely pending a ruling on class certification. Plaintiffs' position in this report is new, and Premier does not believe it would facilitate the orderly and efficient resolution of this case. The Court and the parties will benefit from disclosure of the parties' experts' opinions prior to briefing and argument on class certification, as the parties' experts' theories on key liability and damages issues will affect the certification analysis. Premier submits it would be unfairly prejudicial to require that Defendants oppose a class-certification motion without disclosure of Plaintiffs' experts.[2] Accordingly, Premier maintains that the expert deadline should be extended by 90 days, as previously agreed to by the Parties. To the extent Plaintiffs claim further expert workup may be necessary following the second stage of discovery, there could be a supplemental expert deadline to contemplate only that new information discovered post-certification

## III.    SIRCHIE'S POSITION

Sirchie objects to Plaintiff's characterization of the NARK 20023 as a "defective" test as there is no evidence to support that statement.

### A.    State of Discovery

Sirchie agrees that the main impediment to completing pre-certification motion fact discovery over the past year has been obtaining documents from MADOC.

It is Sirchie's position that fact discovery is complete from a pre-certification motion perspective.  Sirchie Agrees that Judge Dein's Order, by its terms, applied to fact discovery leading up to a Motion to Certify Class.  Sirchie also agrees that Judge Dein's Order stated that

---

[2] This court frequently requires the completion of related expert discovery before permitting a motion for class certification when such discovery may substantively impact the class certification analysis. *See, e.g., Katziff v. Beverly Enterprises, Inc.*, No. 07-11456-NMG, 2009 WL 10729569, at *2 (recommending denial of motion for class certification when filed prior to deadline for completion of expert discovery and permitting refiling of motion only after close of all discovery pursuant to amended schedule established in order).

after a decision on a Motion to Certify Class, the parties may seek additional discovery. Sirchie agrees that no deadlines were set for post-certification motion fact discovery. However, it is Sirchie's position that the intent of the Order was that a schedule for any post-certification motion would be addressed after a decision on a Motion to Certify Class. This is because the nature, extent, and character of any additional post-motion fact discovery needed will not be known until after the Motion to Certify Class is decided. If, as Sirchie believes, no class will be certified, the nature and amount of additional fact discovery needed would be minimal. Conversely, in the event (however unlikely) that a class is certified, the nature of additional fact discovery needed will be heavily dependent on the size and characteristics of any class that is certified (if any). Therefore, it is Sirchie's position that setting deadlines for post-certification motion fact discovery is premature at this point.

As an initial matter, Sirchie agrees that after a decision on a motion to certify class, it may be necessary to conduct a limited number of fact depositions of MADOC personnel who were involved in administering the tests in question.

      **B.**    **Mediation**

Sirchie agrees that this particular moment in time presents the best opportunity for mediation that has presented itself in the case thus far. The parties have conducted enough fact discovery to be able to evaluate the claims and defenses presented and make informed decisions for settlement purposes. In addition, the looming "burn" of additional fees in preparing expert disclosures, responding to expert disclosures, preparing a Motion to Certify Class, and responding to a Motion to Certify Class in and of themselves impose significant and sufficient motivation for all parties to make their best attempt to resolve this matter through mediation and without further unnecessary cost or expense. Sirchie agrees that the parties have agreed on a mutually acceptable mediator and are working to arrange a mediation for a mutually convenient day. All decision makers from all parties are on board with engaging in a serious effort to resolve this matter through mediation.

      **C.    Case Schedule**

Regarding the case schedule, the parties filed a Joint Motion to seek a reasonable extension of expert disclosure deadlines by ninety (90) days. Sirchie does not, at this point see a reason to alter that request as the mediation can be accomplished within the requested extension. In addition, it appears that the Court's Orders entered up to this point have contemplated an expert disclosure prior to a briefing schedule on a Motion to Certify Class. Sirchie agrees that retaining a class-wide damages expert by the plaintiff at this point is unnecessary. It is Sirchie's position that retaining such an expert should never become necessary in this case. Nonetheless, in the event that a Motion to Certify Class is granted in any respect, Sirchie would not object to a further expert disclosure deadline limited to that specific purpose, as long as defendants are provided a similar amount of time to retain similar experts. However, as discussed above, the schedule for that expert disclosure need not be set now and may never be necessary.

**IV.    DOC'S POSITION**

Non-party DOC's position is that non-party DOC discovery is complete. Non-party DOC opposes any additional non-party discovery and has advised all parties that it intends to challenge any additional pre or post-class certification discovery (if a class is certified).

Judge Dein's Order was a final decision regarding the extent of discovery non-party DOC had to produce in response to subpoenas from all parties and DOC has complied with Judge Dein's discovery order. Plaintiffs' position that they now seek "a limited set of additional documents such as lab certifications for all members of any class that is eventually certified in order to establish a false positive rate for NARK 20023 tests" is in direct conflict with Judge Dein's order.

Plaintiffs' assertion that "two to four depositions of specific DOC staff who conducted particular tests, took Sirchie training courses, and drafted or approved the language in the contract under which Premier sold DOC NARK 20023 tests" relates to liability and only came to light during the 30(b)(6) deposition is disingenuous. Plaintiffs received documents identifying the individuals who administered NARK 20023 tests as part of exemplar discovery and never

9

sought additional information; similarly, the parties met and conferred regarding the 30(b)(6) deposition and plaintiffs specifically advised that a contract specialist was not required.

Lastly, no party contacted non-party DOC regarding the parties' prior request for extension of fact discovery, and DOC would have opposed any such request (regarding additional discovery from non-party DOC) had it been contacted. Neither plaintiffs nor Sirchie contacted DOC at any time prior to the filing of this status report to request additional discovery. Although Premier did contact DOC with a request for some additional discovery, DOC advised, and Premier did not contest, that the additional documents requested were beyond the scope of Judge Dein's order.

Dated: February 26, 2025

By: */s/ Kory DeClark*
Kory DeClark*
Matthew Borden*
Christman Rice*
**BraunHagey & Borden LLP**
747 Front Street, 4th Floor
San Francisco, CA 94111
Tel.: (415) 599-0210
declark@braunhagey.com
borden@braunhagey.com
rice@braunhagey.com

Janet Herold (BBO No. 632479)
**Justice Catalyst Law, Inc.**
40 Rector Street, Floor 9
New York, NY 10006
Tel: (518) 732-6703
jherold@justicecatalyst.org

**ATTORNEYS FOR PLAINTIFFS**

By: */s/ Michael E. Coghlan*
Michael E. Coghlan (BBO No. 648540)
Kenneth B. Walton (BBO No. 562174)
**Lewis Brisbois Bisgaard & Smith LLP**
One International Place, Suite 350
Boston, MA 02110
Tel: (857) 313-3936
ken.walton@lewisbrisbois.com

**ATTORNEYS FOR DEFENDANT
SIRCHIE ACQUISITION CO. LLC**

By: */s/ Nathan Marcusen*
Nathan Marcusen, Esq.*
Claire Barlow, Esq.*
**NELSON MULLINS RILEY &
SCARBOROUGH LLP**
1600 Utica Ave. S., Suite 750
Minneapolis, MN 55416
Tel: (612) 464-4500
Fax: (612) 255-0739
Nathan.marcusen@nelsonmullins.com
Claire.barlow@nelsonmullins.com

Lyndsey A. Stults (BBO #687958)
**NELSON MULLINS RILEY &
SCARBOROUGH LLP**
One Financial Center, Suite 3500
Boston, MA 02111
Telephone: 617.217.4700
Facsimile: 617.217.4710
Lyndsey.stults@nelsonmullins.com

**ATTORNEYS FOR DEFENDANT
PREMIER BIOTECH, INC.**

*Admitted *pro hac vice*

## **CERTIFICATE OF SERVICE**

I, Kory DeClark, hereby certify that this document filed through ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on February 26, 2025.

*/s/ Kory DeClark*
Kory DeClark